# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

JACQUELINE HEBERT MAHMOUDI          CIVIL ACTION NO. 13-CV-1126

VERSUS                                            JUDGE HAIK

MICHAEL J. ASTRUE,                          MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the decision of the Commissioner be AFFIRMED.

## Background and Commissioner's Findings

On January 21, 2011, Jacqueline Hebert Mahmoudi filed applications for disability

insurance benefits and a period of disability under Title II of the Social Security Act,

alleging disability beginning September 15, 2009.  The agency initially denied her

application, and Mahmoudi requested a hearing before an Administrative Law Judge.

Her request was granted, and a hearing was conducted on March 1, 2012, before ALJ

Lawrence T. Ragona. [Tr. 20-39[1]]. On May 22, 2012, the ALJ issued a decision, denying

the claim. [Tr. 10-16]. Mahmoudi sought review of that decision by the Appeals Council,

which declined her request on March 19, 2013, leaving the ALJ's decision to stand as the

final decision of the Commissioner.   On May 16, 2013,  Mahmoudi timely filed the

---

[1]The transcript of the administrative hearing and evidence introduced at the hearing and
thereafter are made a part of the record at Rec. Doc. 5-1.  Pages are numbered at the bottom right
corner, and transcript/record references will be made in this document as Tr. __.

instant Complaint in this Court, seeking judicial review pursuant to 42 U.S.C. §405(g).
[Rec. Doc. 1] She is represented by counsel on this appeal.

### APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in
which she was a party may obtain a review of the decision by a civil action. 42 U.S.C.
405(g). This court's review of the Commissioner's decision that the claimant is not
disabled is limited to determining whether that decision was supported by substantial
evidence and whether the proper legal standards were applied in reaching that decision.
*Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698,
704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by
substantial evidence, regardless of whether other conclusions are also permissible, and
any findings of fact by the Commissioner that are supported by substantial evidence are
conclusive and must be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005);
*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might
accept to support a conclusion; it is more than a mere scintilla and less than a
preponderance.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th
Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible
evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at
704.  Finding substantial evidence does not involve a search of the record for isolated bits

of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo*,  or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant

work; and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.   If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner  makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525(1990).  If the claimant is not actually working and her impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the

listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(a)(4). This is a determination of the most the claimant can still do despite her physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do her past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit her to continue her former work, then her age, education, and work experience must be considered in evaluating whether she is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Jacqueline Hebert Mamoudi was born July 2, 1954. [Tr. 23]. She indicated on application forms that back and knee problems, right leg pains, fatigue, depression, heart, and high blood pressure limit her ability to work and caused her to stop working in September, 2009. [Tr. 134].  She has alleged that she became unable to work on September 15, 2009. During the twenty years prior to that date, she had worked in family-owned businesses as manager and hostess at a seafood and steakhouse restaurant and as a clerk and floor manager at a gas station and daiquiri shop. [Tr. 129, 135, 159].  She is a high school graduate and she speaks, reads, writes and understands English. [Tr.133] She has no difficulty with hearing, reading, breathing, understanding, coherency, concentrating, talking and answering. [Tr. 116, 135]. She can dress and feed herself and take care of her personal hygiene, except that her husband must help her get in/out of the bathtub. [Tr. 120].  She is able to pay bills, count change, handle a savings account, and use a checkbook. [Tr. 122].  She has asserted she can only lift under 5 pounds, walk 5-10 minutes, and stand for a few minutes; she cannot bend, squat, reach, kneel, or climb stairs.  She can walk about ten minutes before needing to rest; she can pay attention about twenty minutes; she does a "good job" following written instructions and does "OK" following spoken instructions. [Tr. 124].  She gets along with authority figures and has never been fired from a job.  She does not handle stress well, and she is not good at

-6-

changes in routine. [Tr. 125].  Her aggravation, anxiety and depression make the atmosphere for her marriage unpleasant. [Tr. 125].  She takes Suboxone, Zoloft, and Dilantin, which make her drowsy and cause headaches. [Tr. 126].

Treatment providers to the claimant since 2004 have been Dr. Sidney Dupuy (psychiatrist), Dr. Deborah Johnson (oncologist), Dr. John Mickey (cardiologist), and Dr. Louis Blanda (surgeon). [Tr. 161-163].  Dr. Johnson treated the claimant in 2004 when she was diagnosed and treated for non-Hodgkins lymphoma (NHL).  The claimant maintains a follow-up appointment schedule with Dr. Johnson, but she is no longer in active treatment. [Tr. 234-237].

Dr. Dupuy has the longest history of treatment with the claimant.  From 2006, he heard her complaints of low back pain, lack of motivation, menopausal symptoms, and efforts to lose weight. [Tr. 174-175].  Mahmoudi reported on family stressors and described lengthy trips to a second home in Iran, which she enjoys. [Tr. 175-176].  In response to her reports, Dr. Dupuy prescribed medications including anti-depressants.

Dr. Mickey first treated the claimant in July, 2008, when she complained of chest pains and numbness in the left arm. [Tr. 213].  An exercise tolerance test was negative for ischemic heart disease, and Mahmoudi was noted to have adequate exercise capacity for her age. [Tr. 232].  The cardiologist followed with regular checkups and blood pressure checks with the claimant, and he repeatedly recommended that she stop smoking. [Tr. 219, 221].

Dr. Blanda first saw  Mahmoudi in October, 2009, on referral by Dr. Barry Henry, for an evaluation of back pain since July, 2009. Dr. Henry had recommended therapy, but the claimant had put that on hold until she could see Dr. Blanda.  She reported she had back problems all her life, and she described aching back pain rated 3 out of 10, radiating into her left leg.  She reported her symptoms were aggravated by walking, sleeping, bending, stooping and sitting.  She had no bowel or bladder difficulties. [Tr. 179].  She reported she was self-employed and owned a convenience store. She also reported her history of high blood pressure and non-Hodgkin's lymphoma. [Tr. 180].  On examination, Dr. Blanda noted that the claimant ambulated with antalgic gait to the left; she was tender in the low back at the waist; Straight Leg Reflexes(SLR) were positive on the left; Deep Tendon Reflexes (DTR) were slightly decreased on the left and normal on the right; and lumbar spasm was noted. [Tr. 180].  X-rays showed mild degenerative changes and grade 1 spondylolisthesis at L4-5.  A Lumbar MRI done September 21, 2009 revealed a large dorsal disk protrusion at L4-5, with degenerative changes, producing moderate central canal stenosis and severe left neural foramen narrowing at L3-4; and  grade 1 anterolisthesis at L4-5. [Tr. 180].  The doctor recorded an impression of herniated lumbar disk, and recommended corrective surgery and EMG studies of both legs.

Results of the EMG/nerve conduction studies showed primarily bilateral L5 radiculopathy with minimal L4 component on the left and minimal S1 component on the right; further clinical correlation with anatomic testing was suggested. [Tr. 182].  Surgery

was performed by Dr. Blanda on November 9, 2009, consisting of Lumbar decompression at L4-5 on the left with foraminotomies at the L4 and L5 nerve roots; reduction of spondylolisthesis; instrumentation; and grafting. [Tr. 193].  Two weeks later, X-rays showed good hardware position, improved alignment, and copious bone graft.  The claimant was doing self-directed physical therapy exercises and doing very well. Dr. Blanda encouraged her to stay active with exercises and to go for daily walks. [Tr. 196]. By December, 2009, Mahmoudi was reporting pain and swelling in her right leg and calf, but on examination, Dr. Blanda noted negative Hoffman's sign and good strength, but some edema.  X-rays still showed good positioning of the hardware and graft.  The claimant reported she was taking no pain medications.  Dr. Blanda indicated she was on a "no work" status, and he set a return visit appointment for 4-6 weeks. [Tr. 197].

By January 14, 2010, the claimant reported to her cardiologist her plans to leave the country. [Tr. 222].  At her February, 2010 visit with Dr. Blanda, the claimant reported she took no medication for her back; her operative area looked good to the doctor, and the patient was doing generally better.  He recommended a home exercise program.  [Tr. 201].

During her annual checkup with Dr. Mickey in March, 2010, the claimant reported she was doing no exercises.  It was recommended that she stop smoking, diet, and maintain weekly blood pressure checks. [Tr. 221]. By April 20, 2010, Dr. Blanda noted that a CT scan done on the claimant's last visit looked good.  Mahmoudi reported her

back felt good; her strength was good, and she had occasional right leg pain with over-exertion.  X-rays looked fine, with some scoliosis and adjacent degeneration noted. [Tr. 202].

On July 14, 2010, Mahmoudi visited with her oncologist and reported she felt well, except for some weight gain.  She described her second home in Iran, and Dr. Johnson noted no arthritis, bone or joint pains, swelling of the joints, weakness, confusion, memory loss or difficulty with walking. Per the doctor, the claimant's report was essentially the same as it had been in July, 2009. [Tr. 234-237].

In February, 2011, Mahmoudi reported to her psychiatrist that she still had back trouble, with depression and anxiety.  She had cut down on her anti-depressant medications. [Tr. 176-177].

In March, 2011, Dr. Michael Palmer did a Disability Determination Examination to provide information to be used in making the disability determination. [Tr. 245-248]. He reviewed other medical records provided to him, and he documented the claimant's complaints of chronic fatigue, which she related to chemotherapy and drugs from her 2004 NHL treatment.  She described a history of suicide attempt after her father's death and inpatient psychiatric treatment at that time.  She reported her knee and back were doing well since the surgery in November, 2009, that she had occasional discomfort with bending, stooping, crouching or carrying heavy weights too frequently, but that otherwise she did well.  She denied complaints related to heart disease, and reported she had a

normal stress test in 2008. She confirmed she was able to dress and feed herself; she could stand for only a few minutes at a time, and could not say how long she could stand in an 8-hour day.  She stated she could walk on level ground about ten minutes; sit 15-20 minutes at a time and lift about 2 ½ pounds.  She asserted she could not drive, sweep, mop, vacuum, mow grass, cook or do dishes. She could use stairs. [Tr. 246].

On examination, Dr. Palmer noted that the claimant was in no acute distress, and ambulated without difficulty.  She got on/off the examining table and up/out of the chair without difficulty.  No unsteadiness was noted.  Hearing was normal; speech was understandable.  Mild crepitus was noted in the right knee, with none on the left.  No other bony deformities or joint effusions or abnormalities were noted.  Gait was normal; grip strength was normal bilaterally with normal range-of-motion and dexterity and use of hands; normal range-of-motion of both elbows and forearms, wrists, shoulders, and the cervical spine were noted.  Lumbar flexion was 70 degrees; lateral was 20 degrees; extension was 20 degrees.  Range of motion of the hips and ankles bilaterally was normal.  Flexion of both knees was 150 degrees; straight leg raises were negative in both the sitting and supine positions, and the claimant was able to lie straight back on the table.  She was able to walk on her heels with some discomfort.  She was able to squat and seemed to have good form keeping her back straight and lifting with her legs.  She could walk on her toes with some discomfort, and her heel-to-toe walk was normal.  Motor strength and tone was normal at 5/5; no atrophy or asymmetry were noted.  Sensation was

intact to light touch and pinprick and deep tendon reflexes were 2+.   No signs of psychiatric disease was noted, and cerebellar function was normal.  Imaging showed mild overall degenerative changes of the lumbar spine.  Alignment deformity was noted at L4-5, with metallic hardware consistent with prior surgery. Dr. Palmer documented an "underwhelming exam" of the right knee, with no significant abnormalities noted in left knee.

　　　　As to limitations and restrictions, Dr. Palmer noted: "I have no objective information to substantiate her level of reported fatigue and therefore cannot recommend limitations regarding this." [Tr. 248].  "Overall I find that she should be able to sit, stand and walk without difficulty or limitations.  She should be able to bend, crouch at least on a regular basis.  There are no limitations with regards to the use of her upper extremities. There is no need for an assistive device.  She should be able to carry 25 pounds frequently.  Overall essentially no significant abnormalities noted on exam today and no significant limitations." [Tr. 248].

　　　　By March 29, 2011, the claimant reported to Dr. Blanda for follow up. He noted she was doing much better since surgery, but had degenerative changes and scoliosis. She reported there was no leg pain but she did have back pain with activity.  Dr. Blanda noted that the claimant had a long airline trip to the Middle East and she complained that her pain started again, but he thought this was probably muscular.  X-rays were noted to look good. A course of physical therapy was recommended. [Tr. 273].  When she returned to

Dr. Blanda on June 30, 2011, the claimant had only done six visits of recommended physical therapy since the last visit, despite her report that it was somewhat helpful and she complained of occasional low back pain. On examination, Dr. Blanda noted negative straight leg raises bilaterally, lower extremity strength at 4/5 bilaterally, deep tendon Reflexes were 2+ with a trace of Achilles at the knees. [Tr. 272].

In September, 2011, the claimant was seen by Dr. Mickey, and she reported she was exercising on a treadmill three times a week but she was still unable to stop smoking. [Tr. 266]. An exercise stress test was negative for ischemic heart disease, and it showed adequate exercise capacity for the claimant's age, with no arrhythmias and normal blood pressure throughout the exam. [Tr. 270].

*The Administrative Hearing:*

The claimant testified at the administrative hearing on March 1, 2012 she had a driver's license, but she has not driven since 2009. [Tr. 24-25, 30]. She lived with her husband, and they own a family business, a convenience store with video poker machines and a walk-in bar. [Tr. 28-29]. She denied ever visiting the business or doing any work for the business in recent years. [Tr. 29]. Prior to the onset date, she worked as a cashier in the business and assumed other positions when other employees were absent. She also did paperwork for the business. [Tr. 31-32]. In the 1980's and 1990's, she worked in the family restaurant. [Tr. 28]. At the time of the hearing she did no housework, laundry, cooking, or grocery shopping. [Tr. 30, 37]. She would take short 5-10 minute walks

around the house. [Tr. 30-31].  She had two horses, but she is no longer able to ride, feed

or groom them because she cannot lift. [Tr. 31]. She has traveled overseas to visit her

husband's family in Iran, but the flights are difficult, and she wears a  back brace for

travel.  On her long visits (up to six months), she is well cared for by her husband's family.

[Tr. 33].  The claimant testified, on a typical day, she wakes up, has breakfast, watches

television, has lunch and is then exhausted. [Tr. 29-30].

The claimant described her back surgery in November, 2009.  Before the surgery

she could not walk at all, but her condition improved with the surgery, which she

described as a lower back fusion at L4 and L5, with placement of an artificial disc and a

titanium rod. [Tr. 25].  After the surgery, doctors recommended various stretching and

strengthening exercises, which she tried to do. [Tr. 25-26].  She could not recall her last

appointment with the Dr. Blanda, but she reported she had an appointment scheduled for

the month after the hearing, based on her increasing pain in her low back and right leg.

She reported spasms, fluid on her right knee with pain, and trouble sleeping. [Tr. 26].  She

opined that her pain may be from osteoarthritis and nerve damage in her right leg from

going so long without surgery. [Tr. 27].  She continued to see Dr. Mickey for high blood

pressure and high cholesterol, and took prescribed medications for those conditions. [Tr.

32].

The claimant reported her diagnosis in 2004 with Non-Hodgkin's lymphoma.  She

is in remission, and is not taking any anti-cancer drugs.  [Tr. 28].  She believed that her

-14-

current weakness, inability to concentrate and lack of energy are linked to her cancer, but no physician, including her oncologist, has given that explanation. [Tr. 34].

The claimant testified that she could sit comfortably only ten minutes and when she stands it is very painful.  She tried to walk, but it took a lot to hold her body upright.  She testified she never lifts anything, and she did not think she could lift more than a few pounds. She did not know if there were issues with her fusion. [Tr. 35].  She continued to see Dr. Dupuy for pain management, and he has prescribed Suboxone, which the claimant believed contributed to her lethargy, forgetfulness, and inability to concentrate.  She testified she sleeps about ten hours at night and a couple of hours during the day. [Tr. 36-37].

At the close of the hearing, it was understood that additional medical records would be received by the ALJ from Drs. Johnson and Blanda, and the record was held open for that purpose.

### *The Determination of the ALJ:*

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since September 15, 2009. [Tr. 12]. This finding is supported by the record. At step two, the ALJ determined that the claimant  has the severe impairments of degenerative disc disease of the lumbar spine (20 C.F.R.§404.1520(c)). [Tr. 12].  At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R.§

Part 404, Subpart P, Appendix 1(20 C.F.R. §§404.1520(d), 404.1525, and 404.1526).  He referenced in particular his consideration of the criteria of Section 1.00, *et seq*., in general of the Listings.  However, he found that the evidence in the record did not establish that the claimant's impairments meet or equal the severity criteria of a listed impairment. [Tr. 12]. This finding is not challenged by the claimant.  The ALJ then, after considering the entire record, found that the claimant has the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §404.1567(b). In arriving at the RFC, the ALJ followed the required two-step process to determine (1) whether there is an underlying medically determinable physical or mental impairment which could reasonably be expected to produce the claimant's pain and other symptoms, and (2) whether the claimant's reports concerning the intensity, persistence and limiting effects of his symptoms are credible and substantiated by the objective medical record. He concluded that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC. [Tr. 13].  The claimant has challenged this finding.  At step four, the ALJ found that the claimant is capable of performing past relevant work as a cashier, which work does not require the performance of work-related activities precluded by the RFC (20 C.F.R. §404.1565). [Tr. 15]. On this finding at step four, the ALJ determined that Ms. Mahmoudi has not been under a disability, as defined in the SSA,

from November 15, 2009 through the decision date (20 C.F.R.§404.1520(f)). [Tr. 16]. This finding is challenged by the claimant.

**ASSIGNMENT OF ERRORS**

The claimant asserts that the Administrative Law Judge committed error in (A) failing to find that she is disabled and entitled to benefits; (B) failing to find that she was disabled for a time and entitled to a closed period of disability benefits; and (C) finding that the claimant's testimony and complaints of pain were not credible. [Rec. Doc. 7, p. 4]

### *The RFC as determined by the ALJ is supported by substantial evidence and comports with applicable law.*

"Residual functional capacity," as it is used in the regulations, is a term of art which designates the ability to work despite physical or mental impairments. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983). The RFC is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work. *Id.* The RFC determination is reserved solely to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 2995); 20 C.F.R. §404.1527(e)(2); SSR 96-8p. The record demonstrates that the ALJ considered all symptoms and subjective complaints of the claimant, the objective medical evidence and other evidence and opinion evidence in arriving at the RFC, consistent with the applicable requirements. He cited to the claimant's descriptions of her abilities and activities, the medical history of her previous treatment for high blood pressure and non-Hodgkins lymphoma and her spinal surgery and

-17-

her  physicians' descriptions of the outcomes.  He noted the absence of any treating source opinions in the record of the claimant's physical limitations, and he noted, but gave no medical evidentiary weight to the RFC assessment by a state agency medical consultant. [Tr. 14-15].  The evaluation of Dr. Palmer included the description of functional abilities and limitations, and, while he gave that opinion significant weight, "[g]iven the totality of evidence and the undersigned's observation of the claimant during the hearing," he found that the claimant is "slightly more limited" than determined by Dr. Palmer. [Tr. 15].  On this record, the ALJ's determination that the claimant  has the residual functional capacity to perform the full range of light work is supported.   In this case, the claimant has presented no evidence, other than her own testimony, that her physical impairments would prevent her from working at the light level.  None of her  physicians have made such a declaration.

Given the medical evidence in the record, the failure of that evidence to suggest any limitations on the claimant's activities beyond those set out in the RFC, and the ALJ's determination of the claimant's credibility as a witness, the conclusion is warranted that substantial evidence supports the ALJ's RFC determination.

The claimant has asserted within her argument that it was error for the ALJ to conclude that she could perform light work without obtaining expert vocational testimony to establish that finding. [Rec. Doc. 7, p. 6].  That argument fails because the ALJ was not required to rely on a vocational expert at step four, the step where the disability determination was made in the instant case, namely that the claimant could return to her past relevant work as a cashier.

[Tr. 15]. The use of a vocational expert is appropriate only if the analysis moves to step five and a determination must be made of whether the claimant's skills can be used in other work and of what other specific jobs are possible for the claimant and available to her. 20 CFR §404.1566(e). It is well-settled that a vocational expert is not needed if the ALJ concludes that a claimant could return to her past relevant work. *See Williams v. Califano*, 590 F.2d 1332, 1334(5th Cir. 1979).

The claimant next argues that the ALJ failed to properly consider her ability to maintain employment on a sustained basis. [Rec. Doc. 7, p. 6] The ALJ's opinion considered the claimant's reported activity levels, her medical records and her work history to conclude that she retains the residual functional capacity to perform light work "as actually and generally performed." [Tr. 15].  There is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases. *Perez v. Barnhart*, 415 F.3d 457,465(5th Cir. 2005); *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).  Such a finding is necessary only when the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d at 619. In all other cases,"the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination."  *Perez v. Barnhart*, 415 F.3d at 465.

The claimant in this case does not contend that her symptoms and complaints wax and wane in severity over time, resulting in intermittent periods of incapacity, and she offered no evidence establishing such a waxing and waning of her symptoms.  She instead argues that

she cannot work at all.   Therefore, the ALJ was not required to make a specific finding that she is able to maintain employment. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). An explicit finding that the claimant can maintain employment is not required unless there is evidence in the record that the claimant's condition waxes and wanes in its manifestation of disabling symptoms.   No such evidence was presented.   Accordingly, no such finding was required.

### *The ALJ's credibility determination is supported by substantial evidence and comports with applicable law.*

The task of weighing the evidence is in the sole province of the ALJ.  *See Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  It is well-settled that the ALJ need not give greater weight to a claimant's subjective complaints than to the objective medical evidence.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  Further the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged symptoms/limitations and the evidence as a whole.  *Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).  On the issue of the claimant's credibility, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce her alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of her symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p, *1  The regulations state:

The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p, *4.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  Procedural perfection in administrative proceedings is not required, and a judgment will not be vacated unless a party's substantial rights have been affected.  *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  Furthermore, procedural improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In making the credibility determination, the ALJ may consider descriptions from the applicant, from physicians, or others.  *Hollis v. Bowen*, 837 F.2d 1378, 1386-87(5th Cir. 1988).  He may consider a claimant's noncompliance with prescribed treatment, and a claimant's unwillingness to try all forms of relief offered. 20 CFR §§404.1530, 416.930; *Villa v. Sullivan*, 895 F.2d 1019, 1024(5th Cir. 1990).  He may also consider the effectiveness of treatment. *Johnson v. Sullivan*, 894 F.2d 683, 686(5th Cir. 1990).  He may keep in mind a tendency on the part of a claimant to exaggerate symptoms to obtain benefits.  *Frey v. Bowen*, 816 F.2d 508, 517(10th Cir. 1987).  He may discount a claimant's credibility for inconsistencies between subjective testimony and objective

evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522(5th Cir. 2001; *Reyes v. Sullivan*,

915 F.2d 151, 155(5th Cir. 1990).  Evidence that a claimant receives only conservative

treatment substantially supports an ALJ's adverse credibility finding against complaints of

incapacity and severe symptoms. *Parfait v. Bowen*, 803 F.2d 810, 813-14(5th Cir. 1986).

   In this case, the ALJ explained why he discounted the claimant's subjective

complaints. [Tr. 15]. He confirmed his consideration of the claimant's descriptions of her

daily activities and lifestyle, the medical history which he detailed in the decision, the

degree of medical treatment required, the findings made on examinations, the reports of

treating and examining practitioners, the discrepancies between the claimant's assertions

and the information contained in documentary reports, and the claimant's demeanor at the

hearing and concluded that her allegations of disabling symptoms and limitations are not

fully supported by the evidence presented.  He declared that he "does not necessarily

disagree that the claimant may in fact have permanent and severe impairments; however,

there is no persuasive evidence presented which would indicate that the claimant is

impaired in such a manner as to preclude her from being able to perform work

activity."[Tr. 15].  Per the ALJ, the credibility finding was made in light of the medical

evidence, "which has not identified an impairment that would correspond in severity to the

claimant's allegation." [Tr. 13].  The undersigned finds that the ALJ's narrative was

sufficient on this issue. To make a finding that substantial evidence does not exist, a court

must conclude there is a "conspicuous  absence of credible choices" or "no contrary

medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-344(5th Cir. 1988); citing

*Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983).  Applying that standard, the

undersigned finds that the ALJ's credibility decision is based on substantial evidence and

comports with applicable law.

### *The claimant has not identified a 'closed period' for which she should have been granted disability benefits.*

In the Statement of Errors section of her brief, the claimant submits the alternative

claim that the ALJ erred in failing to find that she was disabled for a time and entitled to a

closed period of disability benefits.  The argument is not mentioned further, and the

claimant does not specify what period of time is referenced or what error occurred.  The

claimant did not raise the issue at the hearing or cite any legal authority in support of the

vague contention.  "Merely mentioning a claim does not constitute a supported argument

or adequate briefing." *Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 926 (5th

Cir. 2008).

Furthermore, seeking a closed period of disability would be inconsistent with the

remainder of the claimant's arguments.  In cases involving closed periods of disability, the

ALJ must decide when the payment of benefits should be terminated under the medical

improvement standard, which requires analysis of eight factors to determine whether

claimant's condition has improved to the extent that she is no longer disabled but is ready

to return to the work force. *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002).  The

claimant has not made that argument.  She has contended at the hearing and in her brief

that her condition has worsened since she first applied for benefits (though medical record

evidence confirms improvement since the claimant's surgery).  Accordingly, the

undersigned finds that the claimant has abandoned any claim she might have had seeking a

closed period of disability benefits.

## CONCLUSION AND RECOMMENDATION

It is well-established that "the ALJ has sole responsibility for determining a

claimant's disability status."  *Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d

901, 905(5th Cir. 1990). As discussed above, this Court's standard of review is (1)

whether substantial evidence of record supports the ALJ's determination, and (2) whether

the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019,

1021(5th Cir. 1990).   In the instant case, the record demonstrates that the proper legal

standards were applied to consideration of Jacqueline Mahmoudi's claims, and the

undersigned cannot conclude that the ALJ failed to base his determination on substantial

evidence, that is evidence which is more than a mere scintilla and less than a

preponderance.  *Boyd v. Apfel,* 239 F.3d  at 704.

Applying the appropriate review standard to the record of the instant case,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the

Commissioner be AFFIRMED.

-24-

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 16th day of September, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge

COPY SENT:

DATE:  9/16/2014
BY:          EFA
TO:          RTH
                pj

-25-